Would you introduce yourself for the record again, Mr. Perry? Good morning, Your Honors. John Perry for Charles Lang, and once again, I try to reserve five minutes if I can. Well, good luck. As Your Honors know, truth in lending is a disclosure law. It protects both the consumer and the honest dealer. If proper disclosure is made, the seller offering the best deal gets the business, and the unscrupulous dealer cannot hide charges to take business away from the honest dealer. In this case, there was a wholesale failure to disclose numerous hidden charges that damaged plaintiffs by increasing the cost of the vehicle without his knowledge. The defendant did not disclose the VTR at all on the disclosure statement. Well, is that a finance charge? No. Well, VTR is basically theft insurance. It's basically what? Theft insurance. If the car gets stolen, they pay you a fixed sum. In this case, I think it was $2,500. In addition to not disclosing the VTR, part of the charge went to a third party, Mr. Kawata, an employee of the defendant, and that was not disclosed either. But why should that be disclosed? That's on the defendant's side. Well, because... I mean, you're not increasing... In other words, the amount was not increased by that amount. That's something that came out of the proceeds that the car dealer kept. Because the act says that any payments to a third party have to be disclosed. Because you might, you know, if you were paying, say you were paying, you know, $189, whatever it is, and you wanted the VTR, if you knew that, say, $150 was going as commission to Mr. Kawata, you might want to go somewhere else and see if you can get it cheaper. I mean, the idea is full disclosure under truth in lending. Well, is this a charge, the kind of charge that, one of those charges that's the same, whether it's a cash or credit? VTR would be, GAAP would not be. But even still, if it's part of the amount financed under Gibson versus Bob Watson, it has to be disclosed. It wasn't disclosed at all. You can put the VTR charge, perhaps. I mean, I'm not sure you can anyway, but because of the LaFonda case. But if you can, and you disclose the amount financed, you have to disclose whatever is in the amount financed. You can't just stuff it all in the cash price. Counsel, didn't Mr. Ling abandon the claim that the VTR is a finance charge? Yes. Well, in this case, well, what we're talking about is the payment to Mr. Kawata as part of the VTR. His commission. His commission. Yeah. And even, whether it's a finance charge or not, if it's not, it's nowhere on the disclosure statement. I mean, you can, you read the disclosure statement, there's no reference to the VTR. Is there any evidence that you've presented that shows that the VTR is charged differently to cash and credit customers? No. So what's the issue? Because it's not disclosed. You can't, under Gibson versus Bob Watson, they said if you itemize the amount financed, which they did, you have to do so accurately in order to keep items in the amount financed as opposed to the finance charge. Some of these items were disclosed on the purchase order, were they not? The purchase order said VTR, and there's two points to that. First of all, the disclosures, the required disclosures have to be on the four corners of the disclosure statement, as you know, and it wasn't. It just flat out wasn't. On the purchase order, it said VTR, but except for you and me and Mr. Bierman, nobody knows what that means, and that's like the Gibson case that we cited, the other Gibson, Gibson versus LTD, we cited that. But the point being that if it's not disclosed anywhere, you can't put it in the amount financed, whether it's cash or credit. Because you just, you don't know it's there. And they're saying it's an accessory. It's just nonsense. I mean, it is just theft of the charge. MR. KINGTON. Counsel, let's go to the agreement itself, page 81 of the record. I gather you're making the argument that the annual percentage rate and the finance charge on that document failed to meet the clear and conspicuous disclosure requirement of the truth in lending? MR. LINDEN.  MR. KINGTON. And you're relying on the teeny, tiny overlap of the number four and the percentage sign and the fact that the pennies part of a $12,295 finance charge overlaps with the printed form by? MR. LINDEN. Yes. And that is hypothetical. MR. KINGTON. And the land ever granted a case like this? MR. LINDEN. I think our case really is stronger than Dixie v. Idaho, which we've cited from this court. In Dixie v. Idaho, everything was perfectly legible. It was just that the disclosures were the same size type. And this court said, no, the finance charge and the annual percentage rate are the keystones of the act, they have to be bigger. Isn't there some kind of a margin of error built into regulations? MR. KINGTON. No. And Dixie talks about that, too. There's no de minimis violation. Well, if you're talking about tolerances for disclosure of the finance charge, yes, there is that. But that's a different standard than what we're going after. This is just a question of legibility. If you can't, the finance charge and the annual percentage rate are, as I said, the keystones of the act. If you can't, you're supposed, your eye is supposed to be drawn towards them. You're supposed to be able to read them easily. They're supposed to be larger than other required. CHIEF JUSTICE ROBERTS. Yeah, but the most that's at stake here, at the very, very maximum, either 9 cents or 10 cents, 10 cents utterly max in a finance charge of $12,295, which is absolutely clear. MR. KINGTON. Not the issue, in my judgment, and you obviously may feel differently. But it's not a question of how much off it might be. It's a question of legibility and clarity. You're supposed to be able to look at that document and, like that, see what the finance charge is, and, like that, see what the annual percentage rate is. They're supposed to be bigger, clearer. You can't say that if they're illegible. And, like I said, I think this case is stronger than Dixie v. Idaho, because in that case it was quite legible, it just wasn't a little bigger. You could read the whole thing. Here, you can't read the whole thing. And the commentary MR. KINGTON. Well, you certainly can read the 1774. You're not arguing seriously that you couldn't figure that out. MR. ROBERTS. No. It's mostly the finance charge, yeah. And the commentary specifically says that the clear and conspicuous requirement includes legibility. And the courts generally give great weight to the commentary, and that's in. MR. KINGTON. Well, what's your response, though, to Judge O'Sallen's comment that at most you're talking about 10 cents here? MR. ROBERTS. Well, that's what I'm saying. That's a tolerance argument, and it is within the tolerance for the amount. But legibility is a different standard than tolerance. If you look at the document and it doesn't appear clear to you, or you can't read it, it's not legible. If it's not legible, the commentary says that's not clear and conspicuous. MR. KINGTON. You're saying there's no law, right? In answer to my previous question, you said there's no de minimis exception in the regulation with respect to the legibility or the clarity part of the regulation. But you think we're free to, or are we prohibited from, you know, reading that into the, implying that in the regulation? MR. ROBERTS. I think you are prohibited. MR. KINGTON. Some kind of a de minimis argument. MR. ROBERTS. I think you are prohibited from doing that under the Dixie case and also Handy v. Anker. In Dixie, the Court said the Truth in Lending Simplification Act was enacted to make things simpler. They still required the finance charge annual percentage rate to be clear and conspicuous and more conspicuous than other required information. MR. KINGTON. Well, it doesn't say anything about a de minimis violation, does it? MR. ROBERTS. I think that it does. MR. KINGTON. Show me where it is. What page are you on? MR. ROBERTS. Well, let's see. Even the lower court here said TILA requires exacting error. MR. KINGTON. So the answer is you can't find any language in Dixie that addresses it? MR. ROBERTS. I believe there is. I don't see it right here. In Handy v. Anker Mortgage Corporation, the Seventh Circuit said TILA does not easily forgive technical errors, hypertechnicality reigns in TILA cases. I believe Dixie did hold that there was no de minimis. I'm not finding it at the moment. MR. KINGTON. In Dixie, were we talking about something that involved a substantial amount there? MR. ROBERTS. I don't think it mattered the amount because the amounts were disclosed fully. They just, it's just the caption finance charge and annual percentage rate wasn't larger  But you could read everything. MR. KINGTON. We're not required to construe statutes in an absurd way, are we? MR. ROBERTS. No, you're not. MR. KINGTON. Don't you agree that to find something that at most could be a ten cent up or down in this circumstance would be an absurd construction? MR. ROBERTS. No, because if the main two disclosures of the act aren't fully legible, the commentary says MR. KINGTON. Who cares about the commentary? They're not judges, a bunch of law professors who make a living of writing about things, and that's great, that's wonderful, but we're not bound by them. MR. ROBERTS. No, I don't think you're bound by them, but they are correct, Judge, because MR. KINGTON. That's what they say. But again, to get back to what the canons of construction are is that we are not, we're not obligated to construe statutes to have an absurd result. And we do not agree, we do not agree that when you're talking about a maximum of ten cents up or down, when you might even be able to read it in the original, is an absurd result. MR. ROBERTS. No, because your eye is supposed to be drawn to the annual percentage rate. It's hard enough for consumers to understand this stuff anyway, and it's supposed to be clear and simple and straightforward. MR. KINGTON. Well, the fact is they don't. They don't even look at them. They just sign them. They're put in front of them and they sign them because they want to buy a car. MR. ROBERTS. Maybe that's true. But the fact is that in construing the statute, we need to act in a manner that doesn't produce an absurd result. And it makes no sense, it's like the old saying, just strain it in that and swallow a camel. That's really what we're talking about here, isn't it? MR. KINGTON. I understand what you're saying. We're saying the same thing. I mean, I'm saying the same thing over and over. I can't agree with you, but I understand. I understand as an advocate, you don't want to agree with me. But as a human being, don't you agree that this is an absurd position? MR. ROBERTS. It is hyper-technical under Handy v. Anchor Mortgage. Hyper-technicality reigns in truth-in-lending cases. I think it's the correct result under this. It's not the real thing. MR. KINGTON. All right, Counselor, I'll get you off the hook. Why don't you talk about the odometer issue? MR. ROBERTS. The odometer issue is simple. He didn't get anything on the odometer. He says he just got the four documents. The odometer disclosure wasn't one of them. MR. KINGTON. Didn't he sign it? MR. ROBERTS. He signed it, yes. MR. KINGTON. Well, what's the issue? MR. ROBERTS. He's got to get it. He said he's got to get it. MR. KINGTON. You'd better spell that out. You're not making sense. MR. ROBERTS. You can sign lots of documents. You can sign a disclosure statement, for example. If they don't give you a copy, there's no disclosure. You have to get a copy to take home and keep. With an odometer statement as well, you can sign it. If they don't give it to you, it's been not properly disclosed. MR. KINGTON. Okay. That's all you have to say on that? MR. ROBERTS. Yeah. MR. KINGTON. All right. Why don't you break at this point and let's hear from the other side. You still have six and a half minutes left. MR. ROBERTS. I just wanted to make a quick point on the gap, if I may. On the gap, again, Mr. Kawata's commission was not disclosed. In order for the gap to be excluded from the finance charge, you have to sign a voluntary request. He did sign a request. Our position is that it can't be voluntary if the underlying charges aren't disclosed. Even if it's the same amount, if you don't know where the money is going, it can't be a true voluntary disclosure. And with that, thank you very much, judges. MR. KINGTON. We'll hear from Pacific Nissan. MR. BEARMAN. Good morning. May it please the Court, Henry Bearman appearing for Pacific Nissan. MR. KINGTON. Mr. Bearman. MR. BEARMAN. If I could, I'd like to address, just briefly, counsel's reference to the Dixie case. Given my short memory, I'll forget if I don't do it now. He states that this case is worse than Dixie because in Dixie, everything was legible, but annual percentage rate, that word, was less conspicuous. It is a clear requirement of the truth in lending law that the words annual percentage rate have to be more conspicuous than other disclosures. That occurred in this case, non-issue. In this case, those words are more conspicuous. And so in Dixie, it's a clear violation. I mean, I don't even see an issue there. We don't have the same issue. We're talking about whether one of the numbers, the last digit, is legible. That is not a clear requirement of TILA. TILA says the words annual percentage rate have to be more conspicuous, not the numbers. With regard to the Gibson case, again, we're talking about, in Gibson, disclosures to third parties. We're not talking about commissions that are retained and what you do with a portion of the money that's retained by the dealer. So in this case, to the extent the dealer retains some portion of his money, I don't think you need to disclose how you pay your employee. If you take what he's saying literally, if you pay your employee hourly, you still need to disclose that as well. There's no distinction. And I just don't think that makes any sense. If I could just talk in general about the claims that are brought up in the case. There are really two types, and one would be the truth in lending claims. The other would be state unfair and deceptive practice claims. And there are essentially three categories of TILA claims in this case. One is whether or not the annual percentage rate disclosures and financial disclosures were legible and therefore clear and conspicuous. I think we've already talked about that. All I'd indicate is that the truth in lending law requires that the required disclosures be legible. In this case, we've got clear commentary and statements in the truth in lending law that the required disclosure is that you disclose the annual percentage rate to the nearest tenth, and there's an example in the commentary of that that I think we cite in the brief. That last digit is not a required disclosure. So I don't even think we get to the... It's on the APR. On the APR. I'm talking about that at this moment. Now as far as the finance charge goes, the finance charge is perfectly adequate to disclose to the nearest dollar. These cents, the eight cents, didn't even need to be disclosed. It's not a required disclosure. So I don't even think we get to the de minimis defense at all. I would point out, though, I'd like to respond to the question that was raised about the Dixie case. In the Dixie case, the court stated that we're not deciding now whether there's a de minimis defense, but we reserve the right to address that later. And it says specifically, this circuit has yet to consider a case involving a truly de minimis deviation in terminology, and we leave open the question whether a violation less serious than that addressed here would warrant liability. And so the court has just left that open as something to be addressed in the future. And again, I don't think we need to get to de minimis in this case, but if we do, that's what it said in the past. With regard to the elements that are to be included in the finance charge, I think we've already talked about the VTR, and council has conceded that VTR is charged in both cash and credit sales, and is therefore not a finance charge. There is a claim that the safety check fee is a hidden finance charge, and I again would vehemently disagree with that. The safety check fee is again charged in both credit sales and cash sales. You cannot sell a vehicle in Hawaii and register it without safety checking it. So whether you finance your purchase or you pay cash, you need to have the car safety checked, and that fee gets charged. So it clearly is not a hidden finance charge. As to the license fee, you have exactly the same. That's the kind of charge that's the same, whether or not it's cash or credit, right? That's correct. In other words, if you buy a car in Hawaii, the dealer is obligated to safety check that car, and you can't register it until it's been safety checked. And even if you pay cash, you have to have it safety checked, and they will charge you to do that. As far as the license fee, again, same issue. You can't license a car without paying a fee, and so that fee cannot be a finance charge. It's paid in both cash transactions and credit transactions. Now, he's stating that under prior law, it needed to be itemized. That's been changed as of 1981. So long as it's payable in both cash and credit transactions, it is not a finance charge. With regard to the itemization of amount financed, Mr. Ling is claiming that VTR should have been itemized separately. I think it's pretty clear from the regulations that accessories and parts of the cash price do not need to be separately itemized. And so when you get your itemization of amount financed, you will get the cash price, and then the additional amounts that are financed, such as appraisal fees, gap insurance. But to the extent that you're talking about something like VTR, which is a window-etched product, it's actually put on the windows of the vehicle, and then there's a warranty that goes with it. That is not an item that has to be itemized beyond the cash price. But as Judge Smith noted earlier, didn't he waive that issue, the VTR? He did on the finance charge. I'm not sure if he's waived it on the itemization. If so, I won't proceed with this further. But there are two separate issues. And I would also indicate that a critical thing with the itemization of amount financed is that you have to show actual damages in order to get an award. There is no award of statutory damages for a violation of the itemization of amount financed. And in this case, we have a person who said that he didn't even read the disclosure statement. So you clearly cannot have actual damages in this circumstance. And essentially, I think there's a number of cases that have addressed this, but the first requirement is that the consumer actually read the contract, they understand it, that they rely on it such that they would have done something differently had it been correctly disclosed, and that they, therefore, suffer damages. And in this case, none of those things happened. And this is particularly true because in Mr. Ling's case, he stated that he was not going to shop for credit. He had just gotten through a bankruptcy, was concerned that he wouldn't qualify for credit, and didn't intend to go beyond that. I'd like to also address just briefly the commission to employees in one other context. And that is that what part of the argument has been that it should be itemized because it's being paid to a third party. First, I think that applies only to amounts that are being paid to third parties on behalf of the consumer. In this case, the amount that's been involved has already been paid to the creditor. And we're talking about what the creditor now does with its share of the money. And I don't think there's any requirement there. Well, maybe Mr. Kawasaki is not a third party in the legal sense. He's not. And that's exactly it. And the other part of that, too, is that the requirement that you disclose that you're holding part of the money applies directly to the creditor who's making the disclosure. And what would happen is if I were to just say that I'm giving all of the money, for example, to the vendor that issues VTR, the argument would be that I'm not being truthful because I'm retaining some portion. So all the law requires is that I disclose I retain some portion. That was done in this case. There's no violation of that. What he's doing is going beyond that. With regard to the safety check fee, there's been an argument that this is a hidden fee and it wasn't shown to the consumer. And I'd like to just point out that there's a purchase order that clearly shows VTR $179. In addition, he signed a separate contract that says vehicle theft deterrent insurance, which matches up exactly for $179. So we have a situation where we have a purchase order, which is the first document documenting the sale, showing that amount of money. We have a separate contract for that product. And it's pretty difficult for me to understand how anybody can claim they weren't aware of it. With regard to the Chapter 480 claim, there's also a claim that the license fee in the disclosure statement is inaccurately disclosed as $139. And that is in some manner unfair and deceptive. Again, I would start with a purchase order. And the purchase order specifically says that the $139 represents not only the registration fee but it represents a safety check fee as well. And it states that it's an approximation. In this case, the safety check fee was $15, which I don't think is disputed. It is a commonly charged amount for that service in this state. The registration fee was exact. In Hawaii, the calculation of the registration fee is unfortunately somewhat complex and it's somewhat convoluted. And as a result, you can have variations in it. That's the reason for the approximation. Within two weeks of this transaction, the difference, $5.50, was refunded to Mr. Ling. And that's before we had any sort of dispute. So the dealership didn't take anything but the actual registration fee, the $15 it's always charged for a safety check, and refunded the difference. So he was not overcharged in any way and it wasn't hidden in any way. If I could just briefly as to the lemon law and odometer statements again, I would agree with the point that was raised earlier and that is that these are pure naked claims that he didn't get the documents. He signed for them. He said that he did get them. I think that that's exactly the reason that you have somebody sign for these documents is so that you can establish that they got them. And I think there's some cases that we cited that said that you are stopped from denying that you got them if you actually sign an acknowledgment saying that you did. And he did. But putting all that aside for the moment. Does that include the odometer disclosure? Yes. He signed saying he got a copy. Now. Was there any effort to establish that there was some sort of fraudulent intent with respect to the odometer statement? No. And there clearly wasn't. In other words, the odometer statement indicated that this was a brand new car with 25 miles. In his deposition, he admitted that he has no reason to doubt the accuracy of that disclosure. So that's exactly the second part of this. The odometer statement, there are no issues. This car was damaged in an accident. There was never a claim that there was a mechanical problem with the car so that he was damaged in any way as a result of anything in the odometer statement. Same is true of the lemon law. This car was never treated as a lemon. There were no problems with it. The only reason it's not running today is it was in an accident. So that's not, there's no causal connection between the failure to get the statements, if that happened, and any damage to him. And under Chapter 480, you have to at least show a causal connection between the violation and damage. I would like to, if I could, just two quick things, Your Honor. And one is that we were a little sloppy in some of our citations to the record. And I think in one case, we discussed the Edwards case and somehow mixed the facts of the person case with the Edwards case. The holding is the same, but the factual discussion is inaccurate. And I'm not quite sure how we did that, but we managed to accomplish that. And in terms of the record reference in one other case, I think we referred to a page number that is inaccurate, which I intended to correct, and which I actually do not have in front of me at the moment. So all I can do is just apologize for the inaccuracy. Thank you, Counsel. Mr. Perry, you have some reserve time. Judge Tashima, in response to your question earlier on Dixie v. Idaho, on our reply brief pages 1 and 2, we talk about the de minimis. And cite to Dixie at page 753, where this Court noted that the Truth in Lending Simplification and Reform Act of 1980, quote, was passed to simplify the information provided to consumers and to limit creditor civil liability to significant violations. It should be noted, however, that under the amended act, the finance charge and annual percentage rate are among the material terms affecting credit shopping and protected by civil liability, end quote. And thus, they went on and said, actions for minor violations have already been eliminated and essentially that there is no more de minimis violation. And then Handy v. Anchor Mortgage in the Seventh Circuit says the same, that hypertechnicality reigns. So, if the finance charge is not legible, they've already cut out a lot of what Congress considered the smaller stuff, the finance charge and the annual percentage rate have to be done right. And it's not almost right or nearly right, it's got to be done right. You've got to be able to read all of it. What about Mr. Bierman's argument that TILA only requires that the disclosure be to the nearest dollar? It doesn't matter. If it's not, if they choose to do it, they have to do it legibly. And that's what the commentary says and I think that's what Dixie says as well and that's what it should be. I mean, these are the two key things in the act and whether you believe that people look at them or not, Congress has determined they're important and that's what the act rests on. But suppose it was just the five digit amount, the 22,500 or whatever it was and that's it, no cents, no pennies, would that have complied? You know, I don't, to be honest, I don't know. But again, it's like in Gibson v. Bob Watson. They said if you choose to itemize the amount financed, you have to do it accurately and correctly. If you choose to add in the pennies, they've got to be legible. But I don't know, I wish I knew the answer to your question, I just don't. Yes, on the VTR again and this is a disclosure law and the disclosures have to be made within the four corners of the disclosure statement. So you can just look, so a consumer can look at one piece of paper and know what the charges are in the transaction. You can't tell from the disclosure statement that there is a VTR charge and it's nonsense to say it's an accessory, it's basically theft insurance. And whether it's a finance charge or not, again, under Gibson v. Bob Watson, they did choose to itemize the amount financed. They did not include the VTR in there or anywhere else on the disclosure statement. And that's improper and that leads to damage in paying for something you don't know you have from the disclosure statement. Regarding the safety check, the safety check was again not disclosed on the disclosure statement, it was lumped in on the government registration fee. It's not a government registration fee. Yes, it's only $15, but most of that goes to the dealer. Yes, it's required, so are tires, but you can't put the cost of tires in the government transfer fee. The government transfer registration fee is for changing title. And other things may be necessary to that, but that's a fee paid to the government. But the safety check fee is not a fee paid to the government. You can't lump it in there. Again, if you itemize, you have to do it right. So, thank you very much. Thank you, counsel. The case just argued will be submitted for decision.
judges: O'scannlain, Tashima, Smith